## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAWN J. ZACHARIAS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 16-2483-JWL** |
| NANCY A. BERRYHILL,[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security

(hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections

216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the

Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court

ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C.

§ 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social
Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms.
Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant.  In
accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB, alleging disability beginning May 2, 2013. (R. 15, 145). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ erred both in considering Listing 14.06B at step three of the decision and in his credibility determination.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052.

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett v. Bowen, 862 F.2d 802, 804

(10th Cir. 1988); Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th

Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This

assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining at step four whether, in light of the RFC assessed, claimant can perform her

past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

Because Plaintiff's allegation of step three error relies in part on her testimony or

her other reports of limitations, the court addresses the alleged errors in the ALJ's

credibility determination before addressing the alleged step three error. It concludes that

Plaintiff has shown no error in the ALJ's decision.

## II. Credibility

Plaintiff argues that the ALJ found her not credible on the basis of three factors,

inconsistencies in the medical record, her reasons for stopping work, and her activities of

daily living. She argues that the ALJ incorrectly evaluated these factors and erroneously

discounted her allegations of symptoms. (Pl. Br. 18-20). The Commissioner argues that

the court should defer to the ALJ's credibility determination. (Comm'r Br. 7). She points

to record evidence that supports the ALJ's credibility findings, id. at 7-9, and argues that

"[e]ven if evidence could support another conclusion, the ALJ's decision is supported by

substantial evidence and is entitled to deference." Id. at 9.

### A. Standard for Evaluating Credibility

The framework for a proper credibility analysis is set out in Luna v. Bowen, 834

F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has

established a symptom-producing impairment by objective medical evidence; (2) if so,

4

whether there is a "loose nexus" between the proven impairment and the claimant's

subjective allegations of pain; and (3) if so, whether, considering all the evidence, both

objective and subjective, the claimant's symptoms are in fact disabling.  See, Thompson

v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The

Commissioner has promulgated regulations suggesting relevant factors to be considered

in evaluating credibility:  Daily activities; location, duration, frequency, and intensity of

symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness,

and side effects of medications taken to relieve symptoms; treatment for symptoms;

measures plaintiff has taken to relieve symptoms; and other factors concerning limitations

or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  The court has

recognized a non-exhaustive list of factors which overlap and expand upon the factors

promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at

1489).

The court's review of an ALJ's credibility determination is deferential.  It is

generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.

1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility

determinations are peculiarly the province of the finder of fact" and will not be

overturned when supported by substantial evidence. <u>Wilson</u>, 602 F.3d at 1144; <u>accord</u>

<u>Hackett</u>, 395 F.3d at 1173.

**B.  Analysis**

While Plaintiff is correct that the ALJ relied upon the three factors of

inconsistency, reasons for leaving work, and daily activities to discount Plaintiff's

allegations of symptoms, she misses his reliance on his finding that the "clinical and

diagnostic evidence does not support the claimant's allegations" because that evidence

supports the RFC assessed.  (R. 23).  Moreover, Plaintiff's argument misses that review

of a credibility determination is deferential.  And, she does not argue so much that the

evidence cannot support the ALJ's findings, but that there is also evidence which might

support a contrary finding.

For example, with regard to inconsistencies she argues that the ALJ's reliance on

the June 11, 2014 exam "is not indicative of the overall medical record that spans twelve

years and is 577 pages long."  (Pl. Br. 18) (citing R. 271-847).  While it is true that the

medical evidence contains 577 pages of records dated from January 2003 through April

2015, Plaintiff was performing substantial gainful activity during most of that time.  She

reported that she quit working on May 8, 2013 (R. 175) and alleged a disability onset date

of May 2, 2013.  (R. 145).  Therefore, the pertinent question is whether Plaintiff was

disabled and unable to perform any gainful work activity after May 8, 2013.  Thus, the

ALJ's finding that Plaintiff's "most recent physical examination [(on June 11, 2014)] was

grossly normal" (R. 23) is very relevant to the questions at issue–disability, and whether

Plaintiff's allegations of disabling symptoms after May 8, 2013 are supported by the

relevant medical records.  Plaintiff's allegations of pain and fatigue before May 8, 2013,

and her doctors' discussions thereof have relatively little to do with a finding of disability

thereafter, especially since performance of substantial gainful activity precludes a finding

of disability while working at substantial gainful activity–regardless of the existence of

pain and fatigue.  20 C.F.R. § 404.1520(a)(4)(i).

Plaintiff does not dispute the ALJ's finding that injection therapy on her knees was

"quite helpful." (Pl. Br. 18).  But, she argues that although she did not have frequent

emergency room visits or hospitalizations as found by the ALJ, she was receiving regular,

ongoing treatment by her primary care provider, and her impairments "are not conditions

that would typically require emergency room visits or hospitalization." Id. at 19.

Plaintiff's argument admits that she did not have frequent emergency room visits or

hospitalizations, and while fibromyalgia, chronic fatigue, and chronic mononucleosis do

not typically require emergency room visits or hospitalizations as Plaintiff suggests, it is

not error for the ALJ to suggest that if Plaintiff's symptoms (particularly pain and fatigue)

were of disabling severity she would likely need to visit the emergency room or be

hospitalized more frequently.

Plaintiff's other credibility arguments are to a similar effect.  She argues that the

ALJ's finding that she stopped working because she was let go by her employer "does not

comport with" her testimony that she missed work three to four days a week because of

her impairments and had exhausted her FMLA leave. (Pl. Br. 19). Plaintiff's argument

regarding stopping working does not account for the ALJ's complete discussion in this

regard. First, the ALJ noted that Plaintiff "has a good work record." (R. 23). He then

explained that this factor was outweighed by other factors, and noted that Plaintiff "was

let go by her employer," which suggests that she stopped work "for reasons not entirely

related [to] her severe impairments, which detracts from her credibility." Id. (emphasis

added). In his explanation, the ALJ acknowledged Plaintiff's argument that she stopped

work because of her impairments, and accepted that argument as partially true, but also

recognized her report to the psychologist, Dr. Israel, that "[s]he was let go of [sic] her last

job." (R. 493). The ALJ's analysis is correct, and it is his responsibility to decide

between conflicting factual assertions.

Plaintiff claims error in the ALJ's reliance on her everyday activities because she

"described a very restricted and limited lifestyle in an attempt to minimize her

symptoms." (Pl. Br. 19). To be sure, Plaintiff's hearing testimony presented a "very

restricted and limited lifestyle," but that is not the same picture painted in her written

function report. The Commissioner need not credit every limitation presented by a

claimant, for that is the purpose of a credibility determination. Moreover, as the ALJ

explained, "[t]he physical and mental capabilities requisite to performing many of the

tasks the claimant admitted she was capable of, replicate those necessary for maintaining

employment." (R. 23).

While some of the record evidence might be seen to support the credibility of

Plaintiff's allegations of symptoms, it is Plaintiff's burden to demonstrate the error in the

ALJ's rationale or findings; the mere fact that there is evidence which might support a

contrary finding will not establish error in the ALJ's determination.  "The possibility of

drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence. [The

court] may not displace the agency's choice between two fairly conflicting views, even

though [it] would justifiably have made a different choice had the matter been before it de

novo."  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and

bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Giving the ALJ's credibility determination due deference, the court finds no error.

## III.    Step Three, Listing 14.06B

Plaintiff claims the ALJ erred in finding that her condition does not medically

equal Listing 14.06B.[2]   She argues this is so because she has the medically determinable

impairment of chronic fatigue syndrome and has a marked limitation in activities of daily

---

[2]Plaintiff attached a "Disability Determination Explanation" Dated October 3, 2016 as Exhibit A to her Social Security Brief.  (Doc. 7, Attach. 1).  In a footnote to her Brief, Plaintiff cites this exhibit and asserts that a subsequent application for DIB was approved with an onset date of May 25, 2015 based on a finding that her impairments now equal Listing 14.06B.  (Pl. Br. 16, n.20).  Plaintiff properly does not argue that Exhibit A demonstrates her condition medically equaled Listing 14.06B during the period at issue here, because the court's review is limited to the administrative record before the Commissioner in this case.  42 U.S.C. § 405(g).  The court has not considered Exhibit A in its review of the decision below.

living, in maintaining social functioning, and in deficiencies in concentration, persistence,

or pace. (Pl. Br. 13-16). The Commissioner argues that the ALJ properly found that

Plaintiff's condition does not medically equal Listing 14.06, and his "findings in other

parts of [his] decision amply demonstrate why." (Comm'r Br. 4). She argues that the

ALJ found Plaintiff did not have marked limitations in activities of daily living because

she lived alone and was able to perform a wide variety of activities of daily living; found

Plaintiff did not have a marked limitation in concentration, persistence, or pace because

she was able to pay bills, handle a savings account and count change, and had no

difficulty reading, writing, remembering words, or following three step commands; and

found Plaintiff did not have a marked limitation in social functioning because she went to

the grocery store twice a week and communicated with family and friends by phone,

email, Facebook, and occasionally in person. (Comm'r Br. 5) (citing R. 18, 19-20, 23,

24-25, 184-86, 196-98, 494, 495). She argues that the ALJ's interpretation of the

evidence in this regard is a reasonable and permissible interpretation and is therefore

entitled to deference. Id. at 6 (citing Lax 489 F.3d at 1084). In her Reply Brief, Plaintiff

explains why in her view the evidence does not support the ALJ's finding of "no

limitation in her activities of daily living, . . . no limitation in the area of social

functioning, . . . [and] no limitation in her ability to maintain adequate concentration,

persistence, or pace." (Reply 2-3) (citing the ALJ's step two findings at R. 19-20).

## A.      Standard for Evaluating Step Three and Listing 14.06B

The Commissioner has provided a "Listing of Impairments" which describes

certain impairments that she considers disabling.  20 C.F.R. § 404.1525(a); see also, Pt.

404, Subpt. P, App. 1 (Listing of Impairments).  If plaintiff's condition meets or

medically equals the severity of a listed impairment, that impairment is conclusively

presumed disabling.  Williams, 844 F.2d at 751; see also Bowen v. Yuckert, 482 U.S.

137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled").  However, plaintiff "has the

burden at step three of demonstrating, through medical evidence, that h[er] impairments

'meet all of the specified medical criteria' contained in a particular listing."  Riddle v.

Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan

v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that

manifests only some of [the listing] criteria, no matter how severely, does not qualify" to

meet or medically equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed

impairments at a higher level of severity than the statutory standard.  The listings define

impairments that would prevent an adult, regardless of h[er] age, education, or work

experience, from performing any gainful activity, not just 'substantial gainful activity.'"

Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a)[3] (1989)).

_____

[3]Part 416 of 20 C.F.R. "relate[s] to the provisions of Title XVI of the Social
Security Act" regarding Supplemental Security Income.  20 C.F.R. § 416.101.  It provides
regulations implementing the Supplemental Security Income program.  Id.  Part 404 of 20
C.F.R. is the analogous part of the regulations implementing Title II of the Act, including

The listings "streamlin[e] the decision process by identifying those claimants whose

medical impairments are so severe that it is likely they would be found disabled

regardless of their vocational background." <u>Yuckert</u>, 482 U.S. at 153. "Because the

Listings, if met, operate to cut off further detailed inquiry, they should not be read

expansively." <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998). Medical

equivalence to a listing may be established by showing that the claimant's impairment(s)

"is at least equal in severity and duration to the criteria of any listed impairment," 20

C.F.R. § 404.1526(a), and the determination of medical equivalence is made without

consideration of vocational factors of age, education, or work experience. <u>Id.</u>, at

§ 404.1526(c).

Listing 14.06B may be met or medically equaled by showing (1) the presence of

and (2) repeated manifestations of undifferentiated and mixed connective tissue disease as

described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00D(5), (3) at least two of the

constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight

loss), and (4) a "marked" limitation in one of three domains of functioning: activities of

daily living, maintaining social functioning, or completing tasks in a timely manner due to

deficiencies in concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1

§ 14.06B; <u>see also</u> Revised Medical Criteria for Evaluating Immune System Disorders, 73

---

Disability Insurance Benefits. 20 C.F.R. § 404.1. 20 C.F.R. § 416.925(a) as currently
effective is identical in every relevant respect to 20 C.F.R. § 404.1525(a) as currently
effective.

Fed. Reg. 14,570-01, 14,582, 14,589-90 (March 18, 2008) (explanatory material, comments, and responses).

Repeated manifestations are manifestations occurring on the average three times a year or once every four months, and lasting two weeks or more. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 14.00I(3). If manifestations do not last two weeks, they may be credited if they occur substantially more frequently; and if they occur less frequently they may be credited if they last substantially longer. Id. With regard to constitutional symptoms or signs, "[s]evere fatigue means a frequent sense of exhaustion that results in significantly reduced physical activity or mental function," and "[m]alaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." Id. at § 14.00C(2). In the listings of immune system disorders, "[s]evere means medical severity as used in the medical community." Id. at § 14.00C(12). It does not have the same meaning as used in step two of the sequential evaluation process. Id. A "marked" limitation in a domain of functioning is a functional limitation that is more than moderate, but less than extreme. Id. at § 14.00I(5). It is a degree of limitation that "seriously interferes with [a claimant's] ability to function independently, appropriately, and effectively," but it does not imply that the claimant "must be confined to bed, hospitalized, or in a nursing home." Id.

**B.     The ALJ's Step Three Findings With Regard to Listing 14.06B**

The ALJ noted that Plaintiff's representative presented a Brief arguing that Plaintiff's condition medically equals Listing 14.06B, but found that "the evidence of

record, as discussed throughout this decision, does not establish" objective medical

findings medically equaling the criteria of the Listing, and he quoted the criteria of that

Listing:

> repeated manifestations of undifferentiated or mixed connective tissue
> disease, with at least two of the constitutional symptoms or signs (severe
> fatigue, fever, malaise, or involuntary weight loss) and one of the following
> at the marked level:  limitation of activities of daily living; limitation in
> maintaining social functioning; limitation in completing tasks in a timely
> manner due to deficiencies in concentration, persistence, or pace.

(R. 20).  In applying the Commissioner's psychiatric review technique at step two of the

sequential evaluation process, the ALJ found that Plaintiff has no limitation in three of the

broad mental functional areas used in applying that technique:  activities of daily living;

social functioning; and concentration, persistence, or pace.  (R. 19).  At step two, he noted

that Plaintiff's "daily activities are affected by pain and fatigue, but not due to any mental

condition," and that Plaintiff "does not socialize often in person due to immune system

issues, rather than because of any mental condition."  Id.

The ALJ also discussed matters relevant to Listing 14.06B elsewhere in his

decision.  He summarized the report of a consultative psychologist, Dr. Israel, that

Plaintiff "had no difficulty reading or writing, remembering three words for ten minutes,

or following a three-stage command."  (R. 18).  He noted Dr. Israel's report that Plaintiff

stated that her mental condition "is not severe enough to interfere with her ability to

understand and remember instructions, be persistent and concentrate on tasks, interact

socially, or adapt to work-related environments, and [Dr. Israel] agreed with the

14

claimant's self-assessment." Id. He noted that Plaintiff made no complaints of fatigue at her most recent examination on June 11, 2014, and that there is little medical evidence regarding her fibromyalgia. Id. at 23. He provided a discussion of Plaintiff's daily activities:

> The claimant has described every day activities that include caring for a pet, tending to her own personal needs and grooming, preparing simple meals, vacuuming, doing laundry, socializing, getting out regularly, driving, shopping, handling her own finances, using a computer for social networking and reading electronic content, crocheting, and swimming for exercise (Ex. 5E; Ex. 8E). It appears that despite her impairment, she has engaged in a somewhat normal level of daily activity and interaction. The claimant's described daily activities are not limited to the extent one would expect, given her complaints of severe pain and subjective limitation. The physical and mental capabilities requisite to performing many of the tasks the claimant admitted she was capable of replicate those necessary for maintaining employment.

(R. 23).

The ALJ acknowledged the opinion of Plaintiff's treating physician, Dr. Gillett, that Plaintiff's condition makes her "tired all the time, causes severe muscle soreness, lack of stamina and pain that interferes with her sleep and daily activities," and that she cannot function well enough to work and "is completely and permanently disabled." Id. at 24. He accorded Dr. Gillett's opinion little weight because it was not supported by his treatment notes, most notably his most recent examination, and because an opinion that an individual is disabled is an administrative finding reserved to the Commissioner. Id.

Finally, the ALJ considered the opinion contained in the Third Party Function Report of Ms. Horner. Id. at 24-25. He accorded the opinion little weight, discounting

those portions that are inconsistent with the preponderance of the evidence and observations of medical doctors, and accepting those opinions that are consistent with the overall evidence of record: that Plaintiff "retains an ability to perform a wide range of daily activities that includes preparing meals, cleaning, and doing laundry, socializing and getting along well with family, friends, neighbors and others, getting out, driving an automobile, shopping, and handling her own finances." (R. 24-25).

> **C.** **Analysis**

Plaintiff does not claim error in the ALJ's evaluation of the opinion evidence. She acknowledges that the required criteria of Listing 14.06B include (1) the presence of and (2) repeated manifestations of undifferentiated and mixed connective tissue disease, with (3) at least two of the constitutional symptoms or signs. (Pl. Br. 13) ("Listing § 14.06B is met when the claimant has repeated manifestations of an undifferentiated or mixed connective tissue disease with at least two of the constitutional symptoms or signs of severe fatigue, fever, malaise or involuntary weight loss."). But, she makes no attempt to point to record evidence demonstrating that these criteria are met or equaled in the present case. This is important at least because "severe" as used in this Listing means medical severity, and does not mean merely having more than a minimal effect on Plaintiff's ability to work, as that term is used at step two of the sequential evaluation process. 20 C.F.R., Pt. 404, Subpt. P, App.1 at § 14.00C(12). Moreover, the regulations specify that both "severe fatigue" and "malaise" are signs or symptoms "that result[] in significantly reduced physical activity or mental function." Id. at § 14.00C(2) (emphasis added).

16

When considered in light of the fact that the Listing should not be read expansively, Plaintiff must show that these criteria are demonstrated by the record evidence, and she did not. Rather, she excused the necessity of such proof "[b]ecause the ALJ already found chronic fatigue syndrome to be a medically determinable impairment, as well as a severe impairment, the only issue is whether Ms. Zacharias has a marked limitation in activities of daily living; social functioning; and/or deficits in concentration, persistence, or pace." (Pl. Br. 13). This assertion says nothing about the constitutional symptoms and signs, or repeated manifestations, and does not even assert that chronic fatigue syndrome[4] meets the definition of, or is medically equivalent to, undifferentiated and mixed connective tissue disease. And, if she is asserting medical equivalence, she does not explain how it is equivalent.

Moreover, Plaintiff's assertion reveals that she is using "severe" in the sense in which it used at step two of the sequential evaluation process. She relies upon the ALJ's finding that <u>chronic fatigue</u> is a severe impairment. But, it was at step two that the ALJ found that <u>chronic fatigue</u> is a severe impairment in this case, and he specifically noted that it was "'severe' within the meaning of the Regulations because [it] more than minimally limit[s] the claimant's ability to perform basic work activities." (R. 17). That

---

[4]The court's review of the evidence revealed only one instance where Plaintiff was said to have "chronic fatigue syndrome." (R. 628). Otherwise, she was reported to have "fatigue" or"chronic fatigue." <u>E.g.</u>, (R. 315, 475, 646, 711, 841). Moreover, in the record that reported "chronic fatigue syndrome," there is no indication that the physician engaged in any deliberative diagnosis regarding this syndrome. Rather, he noted in the subjective section of his notes that Plaintiff reported, "She has chronic fatigue syndrome."

is a finding of step two severity, not medical severity. Further, in his step two analysis the ALJ noted that Plaintiff's "daily activities are affected by pain and fatigue, but not due to any mental condition," and that Plaintiff "does not socialize often in person due to immune system issues, rather than because of any mental condition." Id. at 19. Thereby, he specifically eliminated any consideration of physical limitations from his step two analysis of severity of mental impairments.

Leaving aside this issue, which by itself demonstrates that Plaintiff has not met her step three burden, Plaintiff has not shown a "marked" limitation in any of three domains of functioning: activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. As stated above, a "marked" limitation in a domain of functioning is a functional limitation that is more than moderate, but less than extreme. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 14.00I(5). It is a degree of limitation that "seriously interferes with [a claimant's] ability to function independently, appropriately, and effectively," but it does not imply that the claimant "must be confined to bed, hospitalized, or in a nursing home." Id.

Plaintiff argues that she has shown marked limitations in each of the three domains of functioning, cites record evidence tending to show that she has limitations in each of the domains (Pl. Br. 13-16), and argues that the ALJ erroneously found no limitation in each of the domains in his step two discussion. (Reply 2-3). Plaintiff's arguments reveal a misunderstanding of the Listing and the regulations. The ALJ found that Plaintiff has no limitations in three of the four broad areas of mental functioning when applying the

18

Commissioner's psychiatric review technique at step two of the sequential evaluation

process (R. 19), and it is these findings to which Plaintiff cites when arguing that the ALJ

erred in finding no limitation in each of the three domains of functioning under Listing

14.06B. (Reply 2-3). The ALJ's findings at step two are findings regarding limitations

resulting from Plaintiff's mental impairments, but the findings regarding limitations in the

three domains of functioning under Listing 14.06B "may result from the impact . . . on

[Plaintiff's] mental functioning, physical functioning, or both [] mental and physical

functioning." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 14.00I(4) <u>see also</u> Revised Medical

Criteria for Evaluating Immune System Disorders, 73 Fed. Reg. 14,570-01, 14,589-90

(March 18, 2008) (comments, and responses) (quoting Federal Old-Age, Survivors, and

Disability Insurance; Determining Disability and Blindness; Revision of Part A and Part

B of the Listing of Impairments; Endocrine, and Multiple Body Systems; Immune

System, 58 Fed. Reg. 36,008-01, 36,040, 36,041 (July 2, 1993)).

Moreover, while Plaintiff points to evidence tending to show limitations in her

performance in each of the three domains of functioning she has not shown that those

limitations <u>seriously interfere</u> with her ability to function independently, appropriately,

and effectively. The regulations provide examples of such serious interference for each

of the domains. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 14.00I(6, 7, 8). For activities of

daily living the regulation suggests that a marked limitation exists if the claimant has a

<u>serious limitation</u> in the ability to maintain a household or take public transportation; for

social functioning it suggests that a marked limitation exists where a claimant has a

serious limitation in social interaction on a sustained basis; and for completing tasks in a timely manner it suggests that a marked limitation exists where a claimant has a serious limitation in the "ability to sustain concentration or pace adequate to complete work-related tasks." Id. Plaintiff has not shown such serious limitations, especially when keeping in mind the ALJ's analysis and that the Listings are not to be read expansively.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 20th day of June 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**